IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOHNNIE T.[1],

    Plaintiff,

                                        Civil Action 2:22-cv-3721
    v.                                  Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Johnnie T., brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security ("Commissioner") denying her applications for

social security disability insurance benefits and supplemental security income.  This matter is

before the Court for disposition based upon Plaintiff's Statement of Errors (ECF No. 8), the

Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and

the administrative record (ECF No. 7).  For the reasons that follow, the Court **SUSTAINS**

Plaintiff's Statement of Errors  (ECF No. 8), **REVERSES** the Commissioner of Social

Security's nondisability finding and **REMANDS** this case to the Commissioner under Sentence

Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

1

## I.   BACKGROUND

Plaintiff filed her applications for benefits on August 4, 2020,[2] alleging that she has been disabled since June 1, 2016, due to back issues, headaches/blurred vision, neck issues, weakness in her legs and left arm, female issues, anxiety/heart palpitations, and depression.  (R. at 233-39, 246-52, 271.)  Plaintiff's applications were denied initially in January 2021 and upon reconsideration in April 2021.  (R. at 103-24, 134-53.)  Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ").  (R. at 154-86.)  ALJ M. Drew Crislip held a telephone hearing on November 16, 2021, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 37-71.)  A vocational expert ("VE") and a medical expert ("ME") also appeared and testified.  (*Id.*)  On December 2, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 13-36.)   On September 16, 2022, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-7.)

## II.   RELEVANT RECORD EVIDENCE

### A.  Relevant Hearing Testimony and Statements to the Agency

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] testified she lives with her mother, age 81, and brother who receives hospice services. She stated she only drives occasionally because she does not have a car, but added she has difficulty due to anxiety as well as back and neck pain. She noted she tried to return to work in 2016 but was unable to perform assigned duties. She indicated she lost her home and had to file bankruptcy. [Plaintiff] testified she

---

[2] Plaintiff previously filed for benefits in December 2018. Her claim was dismissed on November 20, 2019, due to an untimely hearing request. There is no indication that she sought review of that dismissal order. (R. at 16; 79-82.)

2

is unable to work due to difficulty walking and trouble with anxiety, explaining she struggles coping with life. She alleged pain in her low back and right hip and, citing neck pain, also endorsed difficulty reaching. She noted she could stand one hour and sit 15 to 30 minutes; could lift a gallon of milk with both hands; and can load the dishwasher or washing machine with light loads. She noted she cannot handle fast-paced activity and that she is better with routine, endorsing difficulty with handling stress and making decisions. She testified she can relate to other people pretty well but considers herself unable to take criticism. [Plaintiff] noted she does not receive mental health treatment "other than self-help." She stated she takes an anti-depressant but does not think it is very effective. She advised that she uses a back brace if vacuuming and uses her mother's cane to walk, although she explained she does not use the cane on flat or level ground. She declared that she naps six to ten times per day.

(R. at 23-24.)

At the hearing, [Plaintiff] testified she receives no professional mental health treatment.

(R. at 26.)

### B.    Relevant Medical Records

The ALJ summarized the relevant medical records as to Plaintiff's mental impairments as

follows:

***[I]n February 2019, [Plaintiff] complained of anxiety. However, she was not interested in other medication or counseling. In 2019 through 2020 [Plaintiff] underwent behavioral therapy with Dr. Greco; typically, other than mood, mental status examinations were normal. She reported no increase of symptoms. [Plaintiff] denied feeling down, depressed, or hopeless, and declared she had not felt little interest or pleasure in doing things. During the consultative psychological evaluation, Dr. Miller heard her complaints of depression, and observed that she appeared anxious and depressed throughout. He surmised that she had difficulty with attention span and distractibility; stated that she spoke in a fast, pressured manner though he could understand 100 percent of her speech found her to need constant refocusing; and noted that she somewhat obsessed on how her spouse had ruined her life. She shared that she was homeless and had no choice but to move in

3

with her mother. [Plaintiff] could recall only two items out of three in a period of five minutes; could not spell the word "world" in reverse correctly; but knew the correct date as well as the name of the President of the United States. As noted heretofore, Dr. Miller assessed her judgment and insight as "moderate." He opined her ability to understand, remember, and carry out one- and two-step job instructions appeared adequate. *** Regarding activities of daily living, [Plaintiff] reported she has a driver's license but does not drive often inasmuch as she has no car, and also has difficulty with panic and anxiety. She stated she enjoys reading the Bible and singing. [Plaintiff] noted she leaves the television on. She indicated she goes grocery shopping with her mother, who is the primary person performing household chores such as meal preparation and laundry.

***

At the hearing, [medical expert, Evelyn Adamo, Ph.D.] testified the only substantial evidence in the record is a consultative evaluation from December 2020 in which [Plaintiff] was diagnosed with generalized anxiety disorder, panic disorder, social anxiety, and dysthymic disorder. Dr. Adamo stated later notes in 2021 mention depression and anxiety but do not offer detailed mental status data. She noted under "paragraph B" of listings 12.04 and 12.06 [Plaintiff] has a moderate limitation in understand, remember, and apply information; moderate limitation in interact with others; a moderate limitation in concentrate, interact, or maintain pace; and a mild limitation in adapt or manage oneself. Dr. Adamo noted there is no evidence to establish the presence of "C" criteria. She opined [Plaintiff] is able to perform simple tasks at an acceptable pace and that distractibility, anxiety, and depression symptoms would preclude detailed or complex work. She noted [Plaintiff] should be able to interact appropriately with others briefly and cope with normal workplace changes if the environment is low stress and production standards are not high as of 2019. Dr. Adamo posited that the record fails to demonstrate the existence of any mental health medically determinable impairment prior to June 2019. I find the opinion of Dr. Adamo persuasive, to the extent she considered [Plaintiff] to suffer with severe mental health medically determinable conditions; I do find, however, that she is capable of detailed as well as simple tasks, considering her history of significant education and skilled work. Certainly, due not only to a moderate restriction in understand/remember/apply information, but also in concentrate/persist/maintain pace, it is proper to delete complex tasks. appropriate to eliminate complex duties. Her issues with panic and social anxiety erect a moderate boundary in the realm of interacting with others, as well as concentrate/persist/maintain pace. With a moderate impairment in the other three more specific "B" criteria functional areas, a moderate restriction in the more general capacity to adapt to/cope with routine changes and daily life, and to self-manage, is adequately established.

(R. at 25-27 (internal citations omitted).)

## III.    ADMINISTRATIVE DECISION

On December 2, 2021, the ALJ issued his decision.  (R. at 16-31.)  The ALJ found that

Plaintiff meets the insured status requirements of the Social Security Act through December 31,

2021.  (R. at 19.)  At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff

has not engaged in substantial gainful activity since June 13, 2019, the earliest possible onset

date of disability.  (*Id.*)   The ALJ found that Plaintiff has the severe impairments of degenerative

disc disease of cervical and lumbar spine, headaches, depressive disorder, and anxiety disorder.

(*Id.*)  The ALJ further found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or
       equal the criteria of an impairment set forth in the Commissioner's Listing of
       Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant
       perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual
       functional capacity, can the claimant perform other work available in the national
       economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

5

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] find[s] that [Plaintiff] has the residual functional capacity to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, sit six hours, and stand and/or walk six hours in an eight-hour workday. She must alternate from sitting to standing or walking for 2-3 minutes after every hour and from standing or walking to sitting for 2-3 minutes after every half-hour, always with capacity to remain on task during position changes, some covered by time off task and typical breaks. She can occasionally reach overhead bilaterally. [Plaintiff] can frequently reach in other directions bilaterally. She can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. [Plaintiff] can occasionally climb ramps and stairs, stoop, and balance (navigate uneven or slippery terrain). She can never work at unprotected heights, proximity to moving mechanical parts of dangerous machinery, and can occasionally operate a motorized vehicle. [Plaintiff] can work in weather frequently, in humidity, wetness, pulmonary irritants, and extreme heat occasionally but never in extreme cold or vibration. She can work in no louder than moderate noise. Also, there should be no exposure to flashing, glaring, or strobing lights, although typical office fluorescent lights are endurable without restriction. She is limited to no complex tasks and no high production rate or fast paced duties. [Plaintiff] can tolerate occasional interaction with supervisors, coworkers, and the public but no teamwork or customer service type work. She is able to tolerate no more than a few changes in a routine work setting defined as followed: she should not be expected to adapt to the performance of new and unfamiliar duties as primary work tasks without orientation (i.e., she is not a self-starter). In addition to normal breaks [Plaintiff] would be off task 7.5 percent of time in an eight-hour workday.

 (R. at 22-23, footnote omitted.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a floor nurse, and an admission nurse. (R. at 28-29.) At step five, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as a price marker, garment folder, or a stock clerk. (R. at 29-30.) He therefore concluded that Plaintiff has not been disabled since June 13, 2019. (R. at 30.)

6

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of

a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d

742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

Plaintiff sets forth a single contention of error.  Plaintiff contends that the ALJ did not

properly evaluate the opinions of the non-examining state agency psychologists, Cindy Matyi,

Ph.D. and Jennifer Swain, Ph.D., in assessing her mental RFC ("MRFC").  (ECF No. 8 at

PageID 1205-11.)

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can

still do despite [her]  imitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1) (2012).  An ALJ

must assess a claimant's RFC based on all the relevant evidence in a claimant's case file.  *Id.*

The governing regulations[4] describe five different categories of evidence: (1) objective medical

evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical

sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5);

416.913(a)(1)–(5).   Objective medical evidence is defined as "medical signs, laboratory

findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is

evidence from a medical source that is not objective medical evidence or a medical opinion,

including judgments about the nature and severity of your impairments, your medical history,

clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§

404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised
regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See*
20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R.

§§ 404.1513(a)(4); 416.913(a)(4).

"Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .

>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

\* \* \*

> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:

>> (i) The existence and severity of your impairment(s);

>> (ii) The existence and severity of your symptoms;

>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .

>> (v) . . . your residual functional capacity;

(vi) Whether your impairment(s) meets the duration requirement; and

(vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

§§ 404.1513(a)(2), (5); 416.913(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in

supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

11

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Here, the ALJ found that Plaintiff suffered from several severe impairments including a depressive disorder and an anxiety disorder. (R. at 19.) The ALJ indicated, as it related to the "paragraph B" criteria under the mental Listings, that Plaintiff had moderate limitations in all four areas assessed: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. at 21-22.) The ALJ further determined, as it related to Plaintiff's MRFC, that mentally Plaintiff is limited to no complex tasks and no high production rate or fast paced duties. He found that Plaintiff can tolerate occasional interaction with supervisors, coworkers, and the public but no teamwork or customer service type work. She is able to tolerate no more than a few changes in a routine work setting defined as followed: she should not be expected to adapt to the performance of new and unfamiliar duties as primary work tasks without orientation (i.e., she is not a selfstarter). In addition to normal breaks the claimant would be off task 7.5 percent of time in an eight-hour workday. (R. at 22-23.)

In making this finding regarding Plaintiff's MRFC, the ALJ indicated he considered Plaintiff's symptoms along with the medical and other evidence, including the medical opinions and prior administrative medical findings in the record. (R. at 23.) Plaintiff asserts that the ALJ's consideration and explanation of the medical opinions of State Agency reviewing psychologists, Cindy Matyi, Ph.D. and Jennifer Swain, Ph.D. are insufficient to meet the

articulation requirements pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  The Court agrees.
As a result, the ALJ's determination of Plaintiff's residual functional capacity is not supported
by substantial evidence and a remand for further proceedings is required.

Cindy Matyi, Ph.D., a State agency psychological consultant, reviewed the record on
January 5, 2021, and completed a psychiatric review technique form in which she evaluated
Plaintiff under Sections 12.04 and 12.06 of the Listing of Impairments. (R. at 86-87, 96-97.)  Dr.
Matyi noted under "paragraph B" criteria a moderate limitation in understand, remember, and
apply information; a moderate limitation in interact with others; a moderate limitation in
concentrate, persist, or maintain pace; a moderate limitation in adapt or manage oneself.  (*Id*.)
She indicated the evidence did not establish the presence of "C" criteria (R. at 87, 97.)
Additionally, Jennifer Swain, Ph.D., a State agency psychological consultant, reviewed the
record on April 17, 2021, as part of the reconsideration and concurred with Dr. Matyi's opinions
regarding the "paragraph B" and "C" criteria. (R. at 107-108, 116-117.)

In assessing Plaintiff's MRFC, Drs. Matyi and Swain both opined that while Plaintiff's
condition restricts her capacity for detailed/complex tasks, Plaintiff is able to comprehend and
remember simple (1-3 step) instructions. (R. at 90, 100, 111, 120.)  In relation to sustained
concentration and persistence capacities and/or limitations, they indicated Plaintiff can carry out
simple (1-3 step) tasks, maintain attention, make simple decisions, and adequately adhere to a
schedule and would need a relatively isolated workstation and supervisory support when first
learning job tasks. (*Id*.)  With regard to social interaction, Drs. Matyi and Swain opined Plaintiff
is susceptible to misinterpreting interpersonal nuance, yet can relate adequately on a superficial

13

basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny. She should not be expected to supervise or persuade others. (*Id*.) Finally, in assessing Plaintiff's adaptation capacities and/or limitations, they opined Plaintiff's symptoms would exacerbate in the face of perceived stressors, yet Plaintiff can adapt to a setting in which duties are routine and predictable and in which changes are infrequent, explained in advance, and introduced slowly. Plaintiff would require supervisory support with goal-setting and planning. (R. at 91, 101, 112, 121)

In discussing Drs. Matyi's and Swain's opinions specifically in relation to the "paragraph B" and "C" criteria, the ALJ indicated as follows:

> I find the State agency opinions persuasive as their findings are consistent with the record including pertinent medical evidence submitted post their analyses. The objective findings on mental status examinations (Exhibits 3F, 4F) supports psychological limits, but that [Plaintiff] is capable of performing work within specific parameters as stated in her residual functional capacity.

(R. at 22.) The ALJ again addresses Drs. Matyi's and Swain's opinions regarding the "paragraph B" criteria indicating:

> I agree with these ultimate conclusions on "B" criteria classifications, although I note that pertinent evidence has been generated and submitted to the record since these analyses which further clarify the precise limitations imposed upon [Plaintiff] by her psychological profile, which are well accounted for in the residual functional capacity I have found demonstrated by the overall record.

(R. at 28.)

The ALJ completely failed to address Drs. Matyi's and Swain's medical opinions regarding Plaintiff's specific MRFC capacity limitations. Instead, the ALJ indicated that he

considered their opinions only regarding the "paragraph B" and "C" criteria. As the ALJ indicates in the decision:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning.

(R. at 22.) By failing to evaluate Drs. Matyi's and Swain's opinions regarding Plaintiff's MRFC, he failed to fulfill his obligations under the regulations, specifically 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). The ALJ's medical source opinion evaluation must contain a "minimum level of articulation" for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017).

While the new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec*., No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021).

The ALJ in the present matter has failed to meet these minimum levels of articulation by failing to address Drs. Matyi's and Drs. Swain's opinions regarding Plaintiff's MRFC limitations which are more restrictive than the ALJ's determination of Plaintiff's residual functional capacity.

The ALJ's failure to specifically discuss the supportability and consistency of Drs. Matyi's and Swain's opinions regarding Plaintiff's mental residual functional capacity requires

remand in this case. "The regulations are clear and imperative in defining the mode of analysis. All medical sources are to be considered, and a rationale articulating how the ALJ applied the factors specified in the regulations must be stated for each source." *Hardy v. Com'r of Soc. Sec.*, 554 F.Supp.3d 900, 909 (E.D. Mich. 2021) (reversing and remanding based upon an ALJ's failure to comply with the new articulation requirement); *accord Miles v. Com'r of Soc. Sec.*, 2021 WL 4905438, at *4 (S.D. Ohio Oct. 21, 2021) (remanding and holding that ALJ did not satisfy the mandate to discuss the supportability factor by virtue of her earlier recitation of Plaintiff's entire medical record and identification of instances where the medical records did not support a finding of disability).

The Commissioner maintains that remand is not required because "even if the ALJ erred in evaluating the prior administrative medical findings, it would not warrant remand as those basis for finding her not disabled initially." (Def's Mem in Opp, at 8.) Defendant's position that the ALJ committed harmless error is not well taken and is contrary to established caselaw which indicates "even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Com'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (*citing Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); *Wilson v. Comm'r of Soc.* Sec., 378 F.3d 541, 546-47 (6th Cir. 2004)). On the record presented in this case, the ALJ's articulation error cannot be viewed as harmless, because the inclusion of additional or different restrictions would likely have altered the vocational expert's testimony. *See Rachel B. v. Com'r of Soc. Sec.*, 2022 WL 815295, at *5 (S.D. Ohio

16

March 16, 2022) (remanding for further review and compliance with new articulation standard).

Such an error of law will require reversal even if "the outcome on remand is unlikely to be

different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal

quotations and citations omitted).

A court's ability to excuse a procedural error depends, upon the nature of the regulation

and the importance of its procedural safeguard. *Rabbers* at 654. By way of example, an ALJ's

failure to comply with the treating physician rule will rarely be excused. *Wilson*, 378 F.3d at

546-47. Such an error may only be excused as harmless if the medical opinion "is so patently

deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because

the Commissioner "adopts the opinion . . . or makes findings consistent with [it],*"* or if the goal

of the procedural safeguard is otherwise met. *Id*. at 547.

In this regard, the Court adopts Magistrate Judge Gentry's detailed analysis regarding

whether the harmless error test set out in *Wilson* should apply to violations of 20 C.F.R. §

416.920c(b)(2):

> The Sixth Circuit has not addressed the circumstances under which an ALJ's failure
> to explain his consideration of the supportability and consistency factors, as
> required by 20 C.F.R. § 416.920c(b)(2), can be excused as harmless error.
> However, several district courts in the Sixth Circuit have held that the harmless
> error test articulated in *Wilson*, which applies to violations of the treating physician
> rule, should apply to violations of Section 404.1520c(b)(2), which is virtually
> identical to Section 416.920c(b)(2). *See Musolff v. Comm'r of Soc. Sec.*, 2022 U.S.
> Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (citing cases). This Court
> agrees that the harmless error test articulated in *Wilson* should apply to violations
> of 20 C.F.R. § 416.920c(b)(2).

> The mandatory articulation requirement in Section 416.920c(b)(2) is similar to the
> "good reasons" requirement of the treating physician rule. Under that rule, an ALJ
> who declines to give controlling weight to the opinion of a treating physician must

17

articulate "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, *5 (1996). The ALJ's stated reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. The purposes of the good reasons requirement are twofold: to permit meaningful judicial review of the ALJ's application of the treating physician rule, and to ensure that claimants understand why the ALJ disagreed with the opinion of their own physician, who considered them disabled. *Wilson*, 378 F.3d at 544-45.

The regulation at issue here is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement. Under the new framework, ALJs do not give controlling weight to a treating physician's opinion. Instead, ALJs must evaluate the persuasiveness of each medical opinion by using a five-factor test. 20 C.F.R. § 416.920c(c). ALJs are not required to explain their consideration of all five factors. 20 C.F.R. §§ 416.920c(b)(2). They are, however, required to explain their evaluation of the supportability and consistency factors. Id. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs.

The mandatory articulation requirement in Section 416.920c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

In sum, the function and purposes of the mandatory articulation rule in Section 416.920c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*. Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 416.920c(b)(2).

This conclusion is consistent with Sixth Circuit's analysis in *Rabbers*. In that case, the Sixth Circuit reasoned that the *Wilson* test should not extend to a regulation that is a mere "adjudicatory tool" designed to aid the SSA. *Rabbers*, 582 F.3d at 656. Here, the mandatory articulation requirement is not an adjudicatory tool. Instead, it imposes a burden of explanation that serves an "independent and important function" by enabling judicial review and allowing claimants to understand the reasons for the decision. *Id.* The Commissioner's use of mandatory language (the

ALJ "will explain") confirms the importance of this procedural safeguard. 20 C.F.R. § 416.920c(b)(2) (emphasis added).

The relative ease or difficulty of conducting a harmless error analysis is also a relevant factor to consider. *Rabbers*, 582 F.3d at 657. An ALJ's failure to comply with Section 416.920c(b)(2) will make it difficult for a court to determine whether the error is harmless. *See, e.g., Terhune v. Kijakazi*, Case No. 3:21-cv-37, 2022 U.S. Dist. LEXIS 130309, *14-15 (E.D. Ky. July 22, 2022). This difficulty provides another reason for concluding that the *Wilson* test should apply to violations of Section 416.920c(b)(2).

For these reasons, this Court concludes that the Wilson harmless error test applies to violations of 20 C.F.R. § 416.920c(b)(2). Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id.* at 546.

*Wilson C. v. Comm'r of Soc. Sec.*, No. 3:20-cv-457, 2022 WL 4244215 (S.D. Ohio Sept. 15, 2022).

Applying the *Wilson* test to the instant matter, the Court does not find harmless the ALJ's failure to comply with the mandatory articulation requirement regarding supportability and consistency in evaluating the prior administrative medical findings of Drs. Matyi and Swain. First, there is no indication that the opinions are patently deficient, and the Commissioner does not suggest otherwise.

Second, the ALJ did not adopt the medical opinions or make findings consistent with these opinions. The ALJ failed to include in Plaintiff's RFC the more restrictive limitations that Plaintiff would need a relatively isolated workstation and supervisory support when first learning job tasks; can relate adequately on a superficial basis in an environment that entails infrequent

public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny; she should not be expected to supervise or persuade others; and a setting in which changes are infrequent, explained in advance, and introduced slowly; and would require supervisory support with goal-setting and planning, all of which were opined by Drs. Matyi and Swain.

Finally, the goal of the regulation is not otherwise met.  As the Commissioner explained when promulgating the revised regulations, the ALJ's medical source opinion evaluation must contain a "minimum level of articulation" to "provide sufficient rationale for a reviewing adjudicator or court." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017).  The ALJ's decision in this matter does not otherwise meet the goal of the regulation as the failure to meet the mandatory minimum levels of articulation clearly frustrates the court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence.  Accordingly, the Court rejects  the Commissioner's assertion that the ALJ's error was harmless.

## VI.  CONCLUSION

For the foregoing reasons, Statement of Errors (ECF No. 8) is **SUSTAINED.**  The decision of the Commissioner is therefore **REVERSED,** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**Date:**   <u>**September 18, 2023**</u>                         <u>  /s/ *Elizabeth A. Preston Deavers*</u>
                                                    **ELIZABETH A. PRESTON DEAVERS**
                                                    **UNITED STATES MAGISTRATE JUDGE**

21